**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

---------------------------------------------------------------- x

VIKTOR ANDREEVICH NIKOLAEV,          :
          :
       Plaintiff,          :
          :     Case No. _____
   - against -          :
          :
MARCO A. RUBIO,          :     **COMPLAINT FOR**
    in his official capacity as          :     **DECLARATORY AND**
    Secretary of the United States          :     **INJUNCTIVE RELIEF**
    Department of State          :
    2201 C St., NW          :
    Washington, D.C. 20520          :
          :
THE UNITED STATES          :
DEPARTMENT OF STATE,          :
    2201 C St., NW          :
    Washington, D.C. 20520          :
          :
AARON P. FORSBERG,          :
    in his official capacity as          :
    Director of the          :
    United States Department of State          :
    Bureau of Economic and Business Affairs          :
    Office of Economic Sanctions Policy          :
    & Implementation          :
    2201 C St., NW          :
    Suite 4657          :
    Washington, D.C. 20520          :
          :
THE UNITED STATES DEPARTMENT OF          :
STATE, OFFICE OF ECONOMIC          :
SANCTIONS POLICY AND          :
IMPLEMENTATION          :
    2201 C St., NW          :
    Suite 4657          :
    Washington, D.C. 20520          :
          :

1

SCOTT K. H. BESSENT,             :
     in his official capacity as    :
     Secretary of the United States  :
     Department of the Treasury   :
     1500 Pennsylvania Ave., NW  :
     Washington, D.C. 20220     :
                                      :

THE UNITED STATES DEPARTMENT OF  :
THE TREASURY,           :
     1500 Pennsylvania Ave., NW  :
     Washington, D.C. 20220     :
                                      :

BRADLEY T. SMITH,         :
     in his official capacity as    :
     Director of the          :
     United States Department of the Treasury :
     Office of Foreign Assets Control :
     1500 Pennsylvania Ave., NW-Annex :
     Washington, D.C. 20220     :
                                      :

     and                   :
                                      :

THE UNITED STATES DEPARTMENT  :
OF THE TREASURY, OFFICE OF FOREIGN :
ASSETS CONTROL,        :
     1500 Pennsylvania Ave., NW-Annex :
     Washington, D.C. 20220     :
                                      :
               Defendants.     :
------------------------------------------------------------- x

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

     Plaintiff Viktor Andreevich Nikolaev (hereinafter, "Plaintiff" or "Mr. Nikolaev") brings

this Complaint for Declaratory and Injunctive Relief against Defendants, the United States

Department of State (the "State Department"), its Secretary Marco A. Rubio, the U.S.

Department of State's Office of Economic Sanctions Policy and Implementation ("Office of

Economic Sanctions Policy and Implementation"), its Director Aaron P. Forsberg, along with the

U.S. Department of the Treasury, its Secretary Scott K. H. Bessent, the U.S. Department of the

Treasury's Office of Foreign Assets Control ("OFAC"), and OFAC's Director Bradley T. Smith, (collectively, "Defendants"), and in support of his Complaint alleges:

**<u>INTRODUCTION</u>**

1.      This lawsuit arises from Defendants' designation of Plaintiff as a Specially Designated National ("SDN") in violation of the U.S. Constitution insofar as Executive Order ("E.O.") 14024 of April 15, 2021 exceeded the powers delegated to the President by Congress, and Defendants' continued and unlawful failure to adjudicate Plaintiff's request to rescind his designation and remove him from the List of Specially Designated Nationals and Blocked Persons (the "SDN List") in a reasonable, timely manner.

2.      In this Complaint, Plaintiff asserts three claims.  First, Defendants have arbitrarily and capriciously treated Plaintiff differently than similarly situated petitioners under the same administrative process.  Second, Defendants are unreasonably delaying adjudication of Plaintiff's petition for removal from the SDN List in violation of the Administrative Procedure Act, 5 U.S.C. §§ 555, 701 *et seq.* (the "APA").  Lastly, there is no factual basis upon which Defendants could reasonably determine that Plaintiff should remain on the SDN List.

3.      On February 24, 2022, President Joseph R. Biden declared a national security emergency and invoked the powers delegated to the President by Congress in the International Emergency Economic Powers Act (the "IEEPA") to impose sweeping sanctions on Russian individuals and entities.  He announced sanctions designed to "impose severe costs on the Russian economy, both immediately and over time. We have purposefully designed these sanctions to maximize the long-term impact on Russia and to minimize the impact on the United States and our Allies."  The power delegated under the IEEPA generally affords implementing

authority to OFAC, which, in turn, designates the specific individuals and entities to the SDN List.

4. Bank Otkritie Financial Corporation ("Bank Otkritie") was placed on the SDN List by Defendant Department of State on February 24, 2022. Subsequently, on April 20, 2022, Defendant Department of State placed 16 Bank Otkritie past and current board members, including Plaintiff, on the SDN List "for being or having been a leader, official, senior executive officer, or member of the board of directors, or members of an entity whose property and interests in property are blocked."

5. Plaintiff petitioned for reconsideration of his designation on October 30, 2024, including a copy of the Bank Otkritie's order on termination of Plaintiff's employment, effective December 31, 2022, along with copies of news articles that reported his resignation.

6. Mr. Nikolaev was a corporate banking professional focusing on small and medium enterprises (SMEs). He is not part of Russia's political class, as reflected in his career trajectory up to 2022 and now. Mr. Nikolaev is clearly not and has never been at the level of visibility and power of very wealthy, more prominent players in Russia's economy, who themselves have been unable to influence Russian President or Russian Government to end the current conflict.

7. Since the termination of his role with Bank Otkritie over three years ago, Plaintiff has not been employed by any entity and has not held any membership on any corporate boards. His focus has been on freelance consulting for non-designated private companies. There is no additional remedial action for Plaintiff to take to support his case for removal from the SDN List. As such, his designation does nothing to further, bolster, or even affect U.S. foreign policy or

deal with the ongoing national security crisis and therefore accomplishes nothing beyond making him collateral damage in the conflict.

8.      OFAC's stated policy of imposing sanctions is "not to punish, but to bring about a positive change in behavior."  *See* https://ofac.treasury.gov/specially-designated-nationals-list-sdn-list/filing-a-petition-for-removal-from-an-ofac-list.  Here, the sole basis for designating Plaintiff was his position at Bank Otkritie.  The failure of the Department of State and OFAC to delist Plaintiff now that he has resigned and has complied with U.S. law decidedly conflicts with established U.S. policy and therefore undermines national interests.  Moreover, keeping Plaintiff on the SDN List communicates that the U.S. assigns no value to course correction and that extinguishing the basis of designation will have no bearing on one's status as an OFAC-designated person.  If Plaintiff cannot be removed from the SDN List based on his resignation from Bank Otkritie and effective departure from Russia's banking sector over three years ago, then there is effectively nothing additional he can do to end his status as a designated individual.

9.      Defendants' unreasonable delay in adjudicating Plaintiff's delisting application violates their obligation to afford Plaintiff due process and equal protection under the law.  When Defendants designated Plaintiff, certain legal protections attached to Defendants' actions under the APA and the U.S. Constitution.  Defendants may not act arbitrarily and capriciously through the adjudication process or otherwise act in a manner contrary to the law.  Defendants may not deprive those affected by their actions of due process and equal protection, including a meaningful opportunity to respond to government action and equal treatment to those similarly situated.  In unnecessarily delaying adjudication of his delisting petition, Defendants have deprived Plaintiff of his rights to equal protection and due process under the U.S. Constitution.

10. Further, Defendant OFAC has violated the law by outsourcing adjudication of Plaintiff's delisting application to the Department of State and its Office of Economic Sanctions Policy and Implementation, which do not have their own regulations providing processes or procedures for parties sanctioned by Defendants, as Plaintiff is, for seeking a rescission of their E.O. 14024 designation. Instead, Defendants the Department of State and Office of Economic Sanctions Policy and Implementation purport to act under 31 C.F.R. § 501.807, Defendant OFAC's regulatory procedures for seeking removal from the SDN List.

11. Furthermore, Defendants' continued refusal to remove Plaintiff from the SDN List has been arbitrary and capricious insofar as OFAC has established clear precedent of delisting former Russian bankers and, in particular, other Bank Otkritie board members and executives designated under E.O. 14024 who had resigned both before and after their designation from the position causing their designation, including the President of the bank, who was both designated onto the SDN List and left the bank at the same time as Plaintiff. Under this Court's binding precedents, Defendants must treat similarly situated parties alike pursuant to the same administrative process. Defendants must adjudicate Plaintiff's matter in a manner similar to those other petitioners, or, at a minimum, provide some explanation as to why Plaintiff has been treated differently.

12. OFAC has delisted numerous other almost identically situated individuals and entities designated as SDNs under E.O. 14024. Plaintiff is aware of at least five of his former colleagues from Bank Otkritie who were removed from the SDN List, and of five other similarly situated former senior bank board members who were designated onto the SDN List under E.O. 14024 and were subsequently delisted after they resigned their positions and filed petitions for removal with OFAC. Therefore, OFAC should not treat him disparately.

6

13.     On December 6, 2024, Plaintiff received the first questionnaire from Defendant the Department of State in response to his delisting petition, and a second questionnaire on April 29, 2025.  Despite the fact that these questionnaires called for information that was irrelevant or unnecessary to Defendants' adjudication of his delisting petition and appeared to be a transparent attempt to either delay a determination or engage in a fishing expedition for information that may warrant designation on other grounds, Plaintiff responded thoroughly to both on February 25, 2025 and June 4, 2025, respectively.

14.     Defendants' delay in adjudicating Plaintiff's petition for reconsideration stands in stark contrast to the simplicity of the question before them.  It has now been almost 20 months since Plaintiff submitted his petition for reconsideration, which presented Defendants with conclusive evidence that Plaintiff resigned from his position at Bank Otkritie subsequent to his designation.  This documented evidence supports the argument that keeping him on the SDN List for four years is unwarranted and constitutes arbitrary and capricious action.   There is an irrefutable record that Plaintiff no longer serves in *any* capacity for Bank Otkritie or any Russian banking institution, thus negating the predicate basis for his designation by the State Department.  Nevertheless, Defendants have clearly failed to adjudicate his petition for removal, which constitutes an unreasonable delay in violation of the APA.

15.     Defendants' failure to adjudicate Plaintiff's petition – which, in effect, amounts to a decision to deny the petition – has caused, and continues to cause, Plaintiff significant personal and financial harm.  As a result of Defendants' arbitrary and capricious actions, Plaintiff has found it exceptionally difficult to live a normal, productive life, including one outside Russia, as his SDN designation precludes any meaningful employment or even the ability to open a bank account outside Russia.  Plaintiff is suffering reputational harm as a result of being designated

for many years, and will continue to do so, and the stigma attached with this designation will only increase with time, making rehabilitation increasingly difficult. Plaintiff will continue to suffer those harms so long as Defendants' unreasonable delay in adjudicating Plaintiff's delisting petition is allowed to continue. Accordingly, Plaintiff brings this action to remedy the wrongs that Defendants have imposed upon him.

## JURISDICTION AND VENUE

16. This action arises under the United States Constitution, the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. §§ 555, 701 *et seq.* This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

17. This Court may grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and Fed. R. Civ. P. Rule 57. This Court may grant injunctive relief pursuant to Fed. R. Civ. P. Rule 65.

18. Venue is proper in the District of Columbia, as this is the district in which the events giving rise to the Complaint occurred and in which Defendants reside. *See* 28 U.S.C. §§ 1391(b) and (e).

## THE PARTIES

19. Plaintiff Mr. Viktor Nikolaev is a Russian citizen and resident of the Russian Federation and the United Arab Emirates (UAE) who formerly served as a member of the Executive Board and as the Head of the Corporate and Investment Unit of Bank Otkritie. Mr. Nikolaev received his law degree from Russia's Higher School of Economics and a Ph.D. in Economics from the Russian State Social University. He later received extensive post-graduate training at prestigious universities abroad, namely the University of California, Berkeley, the

8

University of Chicago, as well as International Institute for Management and Development (IMD) in Switzerland.  Mr. Nikolaev joined Bank Otkritie in 2018 and was among a team of senior, experienced professionals recruited from the banking sector to assist in the Bank's bailout and restructuring and subsequent initial public offering (IPO) endeavors, which major U.S. investment banks were courting to underwrite in the months preceding the conflict in Ukraine. Following OFAC's designation of Bank Otkritie on February 24, 2022, he and his fellow current and certain former board members were designated onto the SDN List on April 20, 2022, pursuant to E.O. 14024 for their roles with Bank Otkritie.  Mr. Nikolaev's resignation became effective December 31, 2022 upon termination of his contract, whereupon he left the bank. Plaintiff primarily resides in Russia, but holds a residency permit in the UAE, and does not hold any positions in the government or the banking sector of the Russian Federation.

20.     Defendant Department of State is a cabinet-level governmental department of the United States federal government that manages the United States' relationships with foreign governments, international organizations, and the people of other countries.   The Department of State is located at 2201 C Street, NW, Washington, D.C. 20037. The Department of State is responsible for designating Plaintiff pursuant to E.O. 14024.

21.     Defendant Marco A. Rubio is the Secretary of the United States Department of State.  Secretary Rubio is sued in his official capacity.

22.     Defendant the Office of Economic Sanctions Policy and Implementation is a federal agency within the United States Department of State's Bureau of Economic and Business Affairs.  The Office of Economic Sanctions Policy and Implementation has purported to process Plaintiff's Petition for Removal.  The Office of Economic Sanctions Policy and Implementation is located at 2201 C Street, NW, Suite 4657, Washington, D.C. 20520.

23.    Defendant Aaron P. Forsberg is the Director of the Office of Economic Sanctions Policy and Implementation.  Mr. Forsberg is sued in his official capacity.

24.    Defendant Department of the Treasury is a cabinet-level governmental department led by the Secretary of the Treasury.  It is located at 1500 Pennsylvania Ave., NW, Washington, D.C. 20220.  Defendant Department of the Treasury is responsible for maintaining the financial and economic security of the United States.  It is also responsible for overseeing various agencies and offices, including OFAC.

25.    Defendant Scott K. H. Bessent is the Secretary of the United States Department of the Treasury.  Secretary Bessent is sued in his official capacity.

26.    Defendant OFAC is a federal administrative agency of the U.S. Department of the Treasury and is located at 1500 Pennsylvania Ave., NW, Washington, D.C. 20220.  Plaintiff understands that OFAC is lawfully responsible for administering U.S. economic sanctions programs, including by designating persons under E.O. 14024 and regulating dealings with them under those authorities—along with serving as the sole administrative agency responsible for the reconsideration and delisting process—via 31 C.F.R. Parts 501 and 587, the "Reporting, Procedures and Penalties Regulations" and the "Russian Harmful Foreign Activities Sanctions Regulations," respectively.

27.    Defendant Bradley T. Smith is the Director of OFAC.  Director Smith is sued in his official capacity.

**FACTUAL ALLEGATIONS**

A.    **Plaintiff's History and Background**

28.    Mr. Viktor Nikolaev is a Russian citizen with a residency permit in the UAE and no other citizenship.  Born in the Moscow region in 1982, Mr. Nikolaev received a law degree from the Higher School of Economics (the "HSE University") in 2004.  In 2007, he received his Ph.D. in Economics from the Russian State Social University.  He later completed executive education programs at IMD in Lausanne, Switzerland, and in Singapore.  Mr. Nikolaev was also trained at elite U.S. universities, completing professional development programs at both the University of California, Berkeley, and the University of Chicago.

29.    In 2003, Mr. Nikolaev began his career as in-house legal counsel for Russia's Lanta-Bank.  He later transitioned to Mira-Bank, where he served as both Head of the Analysis and Valuation Department and Head of the Financial and Economic Department.  In 2008, Mr. Nikolaev joined Sberbank, serving as Assistant to the President and the Deputy Chairman and Vice President and Head of its Credit Department.

30.    Mr. Nikolaev joined Bank Otkritie in 2018, following the then-private bank's collapse and subsequent bailout by the Bank of Russia.  Following the success of the bailout, Bank Otkritie had begun a plan for an initial public offering (IPO).  Plaintiff was drawn to Bank Otkritie because he felt it offered him a unique opportunity and a promotion from his previous role.  At Bank Otkritie, he helped with redesigning and launching key banking processes, updating the customer base, and implementing a profitable business model.  However, the IPO plans were aborted in early 2022 following the onset of the Ukraine conflict.

31.    On February 24, 2022, OFAC imposed blocking sanctions on Bank Otkritie. However, Mr. Nikolaev could not resign immediately as he had a responsibility to honor his

employment contract and wind down his affairs at Bank Otkritie as a licensed financial institution and regulated entity.

32.    Mr. Nikolaev's resignation became effective on December 31, 2022.  Since he resigned his position, he has led a private life and is not employed by any company or entity, nor does he hold any membership within any board of directors.  He currently funds his everyday expenses from savings and sporadic freelance consulting activities.

**B.    The Origins of the IEEPA and the Executive's Constitutional and Statutory Authority**

33.    The IEEPA specifies its general policy and purpose – "to deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the President [of the United States] declares a national emergency with respect to such threat."  50 U.S.C. § 1701(a).

34.    Executive Orders can provide detailed instructions to federal agencies on how to implement and enforce the measures authorized under the IEEPA. They may specify the procedures for license applications, reporting requirements, and enforcement mechanisms. Without specific delegation and instructions in enabling Executive Orders, Defendant OFAC lacks the statutory authority to impose sanctions or designate individuals and entities to the SDN List.

35.    OFAC, the federal agency tasked with administering the U.S. sanctions regimes, has provided guidance stating that "the ultimate goal of sanctions is not to punish, but to bring about a positive change in behavior." *See* https://ofac.treasury.gov/specially-designated-nationals-list-sdn-list/filing-a-petition-for-removal-from-an-ofac-list. This guidance also offers examples of situations in which a delisting might be warranted, including "a positive change in

behavior…" or when "the basis of designation no longer exists…" *Id*. OFAC's own regulations further allow SDNs to assert "that the circumstances resulting in the sanction no longer apply. […] also may propose remedial steps […] which the person believes would negate the basis for sanction." 31 C.F.R. § 501.807.

36.    Even though the State Department has no regulatory framework for considering the delisting of designated individuals and entities, it, too, follows the same principle, stating on its website that "The Office of Economic Sanctions Policy and Implementation […] maintains and enforces sanctions to maximize their economic impact on our targets and minimize the damage to U.S. economic interests. We also work to remove economic sanctions when appropriate to reward and incentivize improved behavior or demonstrate U.S. support for newly established democratic governments[.]" *See* https://www.state.gov/economic-sanctions-policy-and-implementation/.

37.    OFAC has frequently and publicly claimed that the imposition of sanctions is not to punish for past behavior but rather to cause a change in behavior.  Defendants' actions, especially with regards to Plaintiff, demonstrate that although their stated purpose of sanctions is consistent with the IEEPA and the U.S. Constitution, their actions are not.  By needlessly delaying Plaintiff's removal from the SDN List, Defendants have arbitrarily and capriciously failed to recognize Plaintiff's change in behavior while simultaneously delisting similarly situated individuals.

**C.    U.S. Sanctions on the Russian Banking Sector**

38.    On February 24, 2022, Defendant Department of State designated Public Joint Stock Company Bank Financial Corporation Otkritie and its subsidiaries onto the SDN List pursuant to E.O. 14024.  87 Fed. Reg. 11828.  The OFAC Press Release that day stated, in

relevant part, "The U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) today imposed expansive economic measures […] that target the core infrastructure of the Russian financial system – including all of Russia's largest financial institutions and the ability of state-owned and private enterprises to raise capital – and further bars Russia from the global financial system."  With respect to Bank Otkritie's designation, the OFAC press release stated, "Public Joint Stock Company Bank Financial Corporation Otkritie (Otkritie) is deemed by the [Government of Russia] to be a systemically important Russian state-owned credit institution and is Russia's seventh largest financial institution.  Bank Otkritie was designated pursuant to E.O. 14024 for being owned or controlled by, or for having acted or purported to act for or on behalf of, directly or indirectly, the [Government of Russia], and for operating or having operated in the financial services sector of the Russian Federation economy."

39.    Mr. Nikolaev and some of his former and fellow board members at Bank Otkritie were designated on April 20, 2022 pursuant to Section 1(a)(iii)(C) of E.O. 14024 (April 15, 2021), "for being or having been leaders, officials, senior executive officers, or members of the board of directors."

40.    Based on the factual allegations in the government's press release, Section 1(a)(iii)(C) was specifically cited as providing legal authority for its action. In the press release, then Secretary of State Antony Blinken stated, "We will continue to target those who take part in or facilitate sanctions evasion for sanctioned Russian entities, as they are complicit in President Putin's brutal war."  Therefore, the logic of sanctioning board members of financial institutions was to punish their ongoing involvement in the activities of sanctioned financial institutions that aided the Russian government.  Secretary Blinken said nothing about former board members who were no longer associated with such financial institutions.

**D.**    **Plaintiff's Challenge to His Designation**

41.    On October 30, 2024, Plaintiff, through counsel, submitted a petition for reconsideration of his designation onto the SDN List to OFAC.  In his petition, Plaintiff included a letter from Bank Otkritie confirming his resignation, dated December 27, 2022 and third-party confirmations, including news articles announcing his resignation from the bank.  This petition was sent via email to then-Acting Director Lisa Palluconi's attention at OFAC.Reconsideration@treasury.gov and separately to the Defendant Office of Economic Sanctions Policy and Implementation at sanctions_inbox@state.gov, based on undersigned counsel's previous experience representing other former Bank Otkritie board members.

42.    Plaintiff's counsel received an acknowledgment of the petition from OFAC on October 30, 2024.  The email acknowledgment stated, "Your request is under review.  However, the review process can be lengthy, and it is likely that State will seek additional information from your client before a final determination is made…"  Notably, the e-mail also stated, "This designation was done under a Department of State authority. Sanctions_inbox@state.gov will serve as the point of contact for the petitioner during the reconsideration process."

43.    On November 1, 2024, the U.S. Department of State sent a separate follow-up confirmation of receipt.

44.    On December 6, 2024, Plaintiff received a questionnaire from the U.S. Department of State.  That questionnaire asked for information, much of which Plaintiff has already provided in his delisting petition that was filed with OFAC and the Department of State. Nonetheless, Plaintiff promptly responded to all questions in great detail and provided all requested documentation on February 25, 2025.

15

45.    On April 29, 2025, Plaintiff received a second questionnaire from the U.S. Department of State.  That questionnaire asked for additional information, much of which Plaintiff had already provided in his delisting petition that was filed with OFAC and the State Department.  Nonetheless, Plaintiff promptly responded to all questions in great detail and provided all requested documentation on June 4, 2025.

46.    Plaintiff has now been designated for almost four years, having resigned over 1,200 days ago.  Similarly situated petitioners have received adjudication and removal from the SDN List in as little as 35 days, even though, under binding case law in this Circuit, agencies must treat similarly situated parties similarly, unless they can provide a legitimate reason as to why they are being treated differently.  *Kreis v. Sec'y of Air Force*, 406 F.3d 684, 687 (D.C. Cir. 2005) (quoting *Indep. Petroleum Ass'n of Am. v. Babbitt*, 92 F.3d 1248, 1258 (D.C. Cir. 1996)).

47.    There is nothing further that Plaintiff can do to demonstrate "improved behavior" when the basis of his designation is no longer operative.  Plaintiff has done everything that Defendants have requested, including promptly answering the questionnaires that demanded information that is irrelevant and inconsequential to the underlying basis for his designation.  He has been waiting for OFAC and/or the Department of State to provide some form of substantive response to his designation and has stood ready to provide any additional information that the agency may require to render a determination on his delisting petition.

48.    Plaintiff has no other recourse than to request that this Court grant declaratory and injunctive relief to address Defendants' unconstitutional and unlawful designation, as well as to prompt agency action to remedy the "pocket veto" that Defendants have employed in delaying adjudication of Plaintiff's petition to be removed from the SDN List.  A delayed adjudication is

16

virtually indistinguishable from punishment, directly contravening OFAC's own policy set forth on its website, echoed on the website of the Department of State.

49.     Where a designation is based solely on a person's role as a board member of a designated entity, it is illogical to keep that person designated after they have resigned from the underlying position causing the designation, and doing so calls into question the government's motivations in designating, as its response directly contradicts the government's clear, unequivocal statements.  Even the designations under E.O. 14024 reflect this underlying principle. For instance, certain Bank Otkritie board members who retired in December 2021 were not included among those sanctioned on April 20, 2022 for being board members of Bank Otkritie.  By contrast, individuals designated along with Plaintiff in the April 20, 2022 designations were listed as active board members in the bank's most recent public disclosure and were active at the time of the outset of conflict in Ukraine – in other words, there is nothing to suggest that Defendants State Department or OFAC sought to designate parties it considered no longer affiliated with Bank Otkritie.

50.     Plaintiff is also aware of five individuals, specifically his former colleagues from Bank Otkritie, who were removed from the SDN List, and in total five similarly situated former senior board members and executives of other Russian financial institutions who were designated onto the SDN List and were subsequently delisted after they resigned their positions and filed petitions for removal with OFAC.

51.     Specifically, Mr. Nikolaev's former Bank Otkritie colleagues Mr. Mikhail Zadornov, Mr. Anatoly Karachinsky, Ms. Elena Titova, Mr. Andrey Golikov, and Mr. Paul Goldfinch — all former supervisory or executive board members of Bank Otkritie who resigned from their positions — have been removed from the SDN List.  Moreover, in the time since

Plaintiff was designated, at least five other board members or top-executives at major sanctioned Russian financial institutions, namely Ms. Evgeniya Tyurikova, Mr. Alexey Fisun, Ms. Natalya Alymova, Mr. Alexey Panferov, and Ms. Alexandra Buriko – had their petitions adjudicated and were removed from the SDN List.  Notably, those parties were all designated under E.O. 14024, just as Plaintiff, and likewise petitioned for reconsideration based on the fact that they had resigned from their board positions, regardless of whether they resigned before or after their designation.

52.     Accordingly, the State Department and OFAC's own actions evidence an intent to continue sanctioning current board members, not ones who have resigned.

**LEGAL CLAIMS**

**COUNT I**

**DEFENDANTS' TREATMENT OF PLAINTIFF'S PETITION FOR REMOVAL IS IN A MANNER DISPARATE TO SIMILARLY SITUATED PARTIES, IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**

53.     Under the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA"), "the reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,  . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

54.     Under the APA, "agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).

55.     Under binding precedent in this Circuit, administrative agencies must treat similarly situated parties similarly or, in the alternative, provide a legitimate reason as to why they are treating them differently.

56.     Defendants have treated at least nine other similarly situated petitioners designated under E.O. 14024 more favorably than Plaintiff, granting their petitions for removal subsequent to their resignations from their respective banking institutions.  By contrast, Plaintiff has received no determination on his petition despite having submitted and proved with documentary evidence that he resigned from Bank Otkritie over three years ago.  Specifically, Defendants had information regarding Plaintiff's resignation as soon as he submitted his petition for removal from the SDN List.

57.     Defendants' actions have created an impermissible material difference in the consideration of Plaintiff's petition under the same regulatory framework set forth in 31 C.F.R. § 501.807, as compared to similarly situated petitioners.  Defendants have failed to offer any legitimate reason for treating Plaintiff, a similarly situated party, in a different manner under the same administrative process.  Thus, Defendants are denying Plaintiff equal protection under the law.

58.     Further, Defendants are treating Plaintiff differently than similarly situated parties by failing to adjudicate this matter in a timely manner.  Plaintiff will continue to suffer the personal and economic harm of his designation so long as Defendants continue to refuse to adjudicate Plaintiff's delisting petition and treat him differently than similarly situated parties.

**COUNT II**

**DEFENDANTS HAVE ARBITRARILY AND CAPRICIOUSLY DELEGATED
RESPONSIBILITY FOR ADJUDICATING PLAINTIFF'S PETITION IN A MANNER
THAT IS CONTRARY TO THE ADMINISTRATIVE PROCEDURE ACT, RESULTING
IN UNREASONABLE DELAY**

59.     Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

60.     The Administrative Procedure Act, 5 U.S.C. § 551 et seq. ("APA") requires "with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." Under the APA, reviewing courts are required to compel agency actions unlawfully withheld or unreasonably delayed.  5 U.S.C. § 706(1).

61.     Under the APA, "agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13). Courts are required to hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

62.     Defendants' failure to adjudicate Plaintiff's delisting petition for almost 20 months, despite possessing undisputed evidence that Plaintiff no longer meets the legal criteria for designation under E.O. 14024, constitutes unreasonable delay under the APA.

## COUNT III

### DEFENDANTS' FAILURE TO REMOVE PLAINTIFF FROM THE SDN LIST DESPITE THERE BEING NO FACTUAL BASIS FOR HIS CONTINUED DESIGNATION IS ARBITRARY AND CAPRICIOUS IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

63.     Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

64.     Under the Administrative Procedure Act, 5 U.S.C. § 551 et seq. ("APA"), "the reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

65.     Under the APA, "agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).

66.     An agency action is arbitrary and capricious where the agency relied on factors which the agency was not intended to consider, entirely failed to consider an important aspect of the problem, or offered an explanation for its decision that runs counter to the evidence before the agency.

67.     Defendants' failure to remove Plaintiff from the SDN List, despite possessing documentary evidence that Plaintiff no longer satisfies the criteria for designation under E.O. 14024, reflects a complete failure to consider an important aspect of the matter, or an explanation for its decision that runs counter to the evidence before the agency, and therefore is arbitrary and capricious in violation of the APA.

21

## RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court:

A.     Set aside Defendants' actions as unlawful and declare and/or order Defendants' rescission of Plaintiff's designation under E.O. 14024 and removal of his name from OFAC's SDN List;

B.     Order Defendants to issue a written decision on Plaintiff's pending delisting petition and/or provide a legitimate reason why his petition has been treated differently than those of similarly situated petitioners;

C.     Grant an award to Plaintiff of costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq*., and any other applicable provision of law; and

D.     Such other and further relief as the Court may deem proper.

Dated: June 22, 2026

Respectfully submitted,

/s/ Amir H. Toossi
Amir H. Toossi
Akrivis Law Group PLLC
747 Third Ave., 32nd Floor
New York, NY 10022
Telephone: (646) 280-6370
Email: atoossi@akrivislaw.com
NY State Bar No. 4236071

/s/ Farhad S. Alavi
Farhad Alavi
Akrivis Law Group PLLC
5335 Wisconsin Ave., Suite 440
Washington, D.C. 20015
Telephone: (202) 730-1271
Email: falavi@akrivislaw.com
D.C. Bar No. 500560

*Counsel for Plaintiff Viktor Nikolaev*

22